IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SYED N. NAQVI, :
:
      Plaintiff, :
:
v. : Civil Action No. __1:18cv71__ (AJT/JFA)
:
EQUIFAX INFORMATION SERVICES, LLC, :
:
  Serve: Corporation Service Company :
       100 Shockoe Slip :
       2nd Floor :
       Richmond, VA 23219 :
:
TRANS UNION, LLC :
:
  Serve: Corporation Service Company :
       100 Shockoe Slip :
       2nd Floor :
       Richmond, VA 23219 :
:
      Defendant. :
:

**COMPLAINT**

COMES NOW the Plaintiff, Syed N. Naqvi ("Plaintiff"), by counsel, and for his Complaint against the Defendants, Equifax Information Services, LLC ("Equifax") and Trans Union, LLC ("Trans Union"), he alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for statutory, actual, and punitive damages, costs, and attorney's fees brought pursuant to 15 U.S.C. § 1681, *et seq.* (the Fair Credit Reporting Act or "FCRA").

2. Equifax and Trans Union, two of the "Big 3" consumer reporting agencies, have a long history of consumer complaints and lawsuits alleging (and establishing) that they unreasonably mixed the credit files and information of one consumer with the credit reports of

another consumer. In this case, representative of numerous others, Equifax and Trans Union combined or mixed the credit files of the Plaintiff with a complete stranger with a similar name, resulting in a collection's account appearing in Plaintiff's credit report that belonged to someone else.

## JURISDICTION

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

## PARTIES

4. Plaintiff is a natural person residing in Virginia, and at all times relevant to the Complaint was a "consumer" as defined by 15 U.S.C. §1681a(c).

5. Equifax is a foreign limited liability company authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

6. Equifax is a "consumer reporting agency" as defined in 15 U.S.C. §1681a(f). It is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

7. Trans Union is a foreign limited liability company authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

8. Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. §1681a(f). It is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

## FACTS

9. In September 2017, Plaintiff applied for a mortgage loan.

10. At that time, Plaintiff learned that Equifax and Trans Union were reporting inaccurate information in his credit report.

11. For example, Equifax and Experian were reporting that Plaintiff had a collection account with Advance Collection Professionals for an Access Media 3 account with an outstanding balance of $84.

12. This information was inaccurate—Plaintiff has never had an Access Media 3 account.

13. This derogatory item severely reduced the Plaintiff's credit score and negatively impacted his ability to obtain a mortgage loan.

14. As a result of this negative credit reporting, Plaintiff suffered actual damages.

### Equifax's Lax Standard and Willful Misconduct

15. Equifax has substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

16. As early as 1992, the Attorneys General of eighteen states were forced to file a lawsuit against Equifax because of its conduct in connection with mixing consumer credit files. The lawsuit resulted in an Agreement of Assurances between the attorneys general relating to Equifax's responsibilities to prevent mixed files.

17. Only three years after the Agreement of Assurances, the Federal Trade Commission ("FTC") brought another enforcement action due to Equifax's widespread violations of the FCRA, including the creation of mixed files and then furnishing them to users who did not have a permissible purpose to view the information of the consumer. *In the Matter of Equifax Credit Information Services, Inc.*, 12 F.T.C. 577 (Aug. 14, 1995). This enforcement

action resulted in a consent order between Equifax and the FTC that sets forth certain procedures to prevent mixed files and to conduct reinvestigations as required by the FCRA.

18. Despite the 1992 Agreement of Assurances and the 1995 Consent Order, Equifax's computer system causes these mixes because it does not require or use full identifying information for a potential credit grantor's inquiry even when unique identifiers such as a full social security number are present. It does this in order to sell more credit reports.

19. Equifax knows that their computer system causes one individual's credit report to be confused with another individual's credit report causing a "mixed file."

20. Equifax has been sued repeatedly for failing to prevent mixed consumer files, including the $18.6 million verdict on July 26, 2013 in *Miller v. Equifax Information Services*, LLC, 3:11-cv-1231 (D. Or. 2011) (Dkt. No. 79).

21. The recent verdict from Oregon is not the only multi-million-dollar verdict against Equifax in a mixed file case. In November 2007, a jury found in favor of another consumer with a mixed file and awarded her $219,000 in actual damages and $2.7 million in punitive damages. *Williams v. Equifax Info. Servs., LLC*, No. 48-2003-CA-9035-O (Orange County 2007).[1]

22. These cases are representative of numerous other lawsuits around the country where Equifax has been sued for failing to prevent mixed consumer files. *See, e.g.*, *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220 (D.N.M. 2006).

23. Numerous cases alleging a mixed file and/or a failure to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit

---

[1] Consumer Victory: Equifax Must Pay $ 2.9 million for Mixing Up Credit Files, The Consumer Advocate, Vol. 14, No. 1, National Association of Consumer Advocates (Jan.-Mar. 2008), at 14; Consumer Wins Fight For Credit Report Accuracy, Privacy Times, Dec. 6, 2007.

reports and credit files it publishes and maintains have also been brought in this District and Division. *See e.g.*, *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235 (4th Cir. 2009); *Sloane v. Equifax Info Servs. LLC*, 510 F.3d 495 (4th Cir. 2007); *Lopez v. Trans Union, LLC,* 1:12-cv-902 (E.D. Va. 2012); *Lopez v. Trans Union, LLC*, 1:12-cv-1325 (E.D. Va. 2012); *Chaudhary v. Experian Info. Sols., Inc.*, 3:13-cv-577 (E.D. Va. 2013); *Valdez-Estep v. Equifax Info. Servs., LLC*, 1:13-cv-00007 (E.D. Va. 2016); *Kang v. Equifax Info. Servs., LLC*, 1:15-cv-01406 (E.D. Va. 2015); *Moulvi v. Equifax Info. Servs. LLC*, 1:15-cv-01073 (E.D. Va. 2015); *Barclay v. Equifax Info. Servs., LLC*, 1:15-cv-00691 (E.D. Va. 2015); *Robinson-Huntley v. Equifax Info. Servs., LLC*, 1:15-cv-00626 (E.D. Va. 2015).

24. Equifax knowingly chooses to ignore these notices of its mixed file problems. It does so even though it already possesses a simple, easy, and inexpensive means to correct and avoid the problem.

25. Despite these lawsuits and multi-million-dollar verdicts, Equifax has not significantly modified its procedures to assure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

26. Upon information and belief, Equifax has not, and does not intend, to modify its procedures to comply with this section of the FCRA because compliance would drastically increase its operating expenses.

27. Accordingly, Equifax's violation of 15 U.S.C. § 1681e(b) was willful and Equifax is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## Trans Union's Double Standard and Willful Misconduct

28. Trans Union has had substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

29. As early as 1992, the attorneys general of seventeen states were forced to file a lawsuit against Trans Union because of its conduct associated with mixing consumer credit files. In settling the enforcement action brought by the seventeen states, Trans Union agreed to make the following practice changes:

> 1. ***Implement*** or continue to utilize and maintain reasonable ***procedures to avoid the occurrence or reoccurrence of Mixed Files***.
>
> …
>
> 3. Analyze incoming data submitted by Subscribers to Trans Union as well as historical statistics in an attempt to detect data format errors, programming errors, or other inaccuracies, and take such corrective action with respect thereto as may be appropriate.
>
> 4. ***Take reasonable measures to prevent reporting of information that is not likely to pertain to the Consumer*** who is the subject of the Report and to prevent duplicate listings of an account with the same member number, opening date and consumer account number.
>
> …
>
> 5. [a]dvise their Subscribers, that they shall attempt to (i) ***obtain Full Identifying Information from Consumers***; (ii) use, when provided by the Consumer, Full Identifying Information when reporting Credit Information to Trans Union; and (iii) ***use Full Identifying Information when requesting Consumer Reports***, except where a reliable and accurate alternative methodology is utilized for requesting Consumer Reports.[2]

*Alabama v. Trans Union Corp.*, Civil Action No. 92C 7101, Dkt. No. 41-5 at 5-6 (N.D. Ill. Oct. 26, 1992) (emphasis added).

---

[2] "Full Identifying Information" is defined in the Consent Order as the "full last and first name; middle initial; full street address; zip code; year of birth; any generational designation; and social security number."

30. Trans Union's computer system causes these mixes because, despite the 1992 Consent Order, Trans Union does not require or use full identifying information for a potential credit grantor's inquiry.

31. Trans Union knows that their computer system causes one individual's credit report to be confused with another individual's credit report causing a "mixed file."

32. Trans Union has been sued repeatedly for failing to prevent mixed consumer files. *See, e.g.*, *Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996); *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329 (9th Cir. 1995); *O'Conner v. Trans Union Corp.*, Civ. No. 97-4633, 1999 WL 773504 (E.D. Pa. Sept. 29, 1999); *see also Thomas v. Trans Union*, C.A. No. 00-1150 (D. Or. 2002) (jury verdict of $5.3 million remitted to $1.3 million); *Soghomonian v. Trans Union*, (E.D. Cal.) ($990,000 verdict); *Price v. Trans Union*, LLC, 737 F. Supp. 2d 281 (E.D. Pa. 2010); *Neclerio v. Trans Union*, LLC, Civ. No. 3:11cv1317 (D. Conn. Aug. 17, 2011).

33. Numerous cases alleging a mixed file and/or a failure to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains have also been brought in this District and Division. *See, e.g.*, *Mullins v. Equifax Info. Servs., LLC*, 2007 WL 2471080 (E.D. Va. August 27, 2007); *Saunders v. Branch Banking & Trust Co.*, 3:05cv731 (E.D. Va.); *Ross v. Experian Info. Sols., Inc.*, 3:09cv144 (E.D. Va. 2009); *Baker v. TransUnion, LLC*, 3:07-cv-107 (E.D. Va. 2007); *Lopez, Jr. v. Trans Union, LLC,* Civil Action No. 1:12-cv-902 (E.D. Va. 2012); *Lopez, Sr. v. Trans Union, LLC*, Civil Action No. 1:12cv1325 (E.D. Va. 2012); *Thach v. Trans Union*, Civil Action No. 3:13-cv-00551 (E.D. Va. 2013); *Qadir v. Equifax Info. Servs., LLC*, Civil Action No. 3:13-cv-00557 (E.D. Va. 2013); *Islam v. Equifax Info. Servs., LLC*, Civil Action No. 1:14-cv-

0288; *Chaudhary v. Experian Info. Sols., Inc.*, Civil Action No. 3:14-cv-00124 (E.D. Va. 2014); *Chaudhary v. Trans Union, LLC*, Civil Action No. 3:14-cv-00123 (E.D. Va. 2014).

34. Trans Union knowingly chooses to ignore these notices of its mixed file problems. It does so even though it already possesses a simple, easy, and inexpensive means to correct and avoid the problem. Trans Union could instead use its "do not merge" procedure and match only based on the correct social security numbers and dates of birth. As the United States District Court for the Eastern District of Pennsylvania explained:

> When a file has a "do not merge" tag placed on it then digit-for-digit matching of all nine digits of a social security number are required. Implementing the "do not merge" procedure only takes a few seconds, and it "involves the mere click of a button on a computer screen."

*Price v. Trans Union, LLC*, 737 F. Supp. 2d 281, 284 (E.D. Pa. 2010).

35. Trans Union has been previously warned of its FCRA misconduct. The Pennsylvania federal court cautioned Trans Union: "Given Defendant's general knowledge of the mixed file problem and Defendant's failure to act to ensure these problems did not continue, a jury could reasonably find that Defendant acted in reckless disregard and summary judgment should be denied." *Id.* at 289.

36. Despite these lawsuits, Trans Union has not significantly modified its procedures to assure that the credit reports it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA, 15 U.S.C. § 1681e(b).

37. Upon information and belief, Trans Union has not, and does not intend, to modify its procedures to comply with this section of the FCRA because compliance would reduce its bottom-line.

38. Accordingly, Trans Union's violation of 15 U.S.C. § 1681e(b) was willful, and Trans Union is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

39. Trans Union's failure to modify its procedures caused substantial harm to Plaintiff.

## COUNT ONE:
### (Violation of 15 U.S.C. § 1681e(b))

40. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

41. Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning the Plaintiff.

42. As a result of this alleged conduct, Plaintiff suffered actual damages, including but not limited to damage to his credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

43. The Defendants' conduct, actions, and inaction were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

44. The Plaintiff is entitled to recover actual damages, statutory damages, costs, and his attorney's fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendants; for his attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate, and such other relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED**.

                                         Respectfully Submitted,
                                         **SYED N. NAQVI**

                                         By:  */s/ Kristi C. Kelly*
                                                           Counsel

Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
Casey S. Nash, Esq., VSB #84261
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com
Email: casey@kellyandcrandall.com

*Counsel for Plaintiff*